**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
RYAN O'DELL,                                    :
                                                :
            Plaintiff,                          :   Civil Action No. 22-cv-2131
                                                :
v.                                              :   COMPLAINT FOR VIOLATIONS OF
                                                :   SECTIONS 14(a) AND 20(a) OF THE
US ECOLOGY, INC., E. RENAE CONLEY,              :   SECURITIES EXCHANGE ACT OF
KATINA DORTON, GLENN A.                         :   1934
EISENBERG, JEFFREY R. FEELER,                   :
DANIEL FOX, MACK L. HOGANS,                     :   JURY TRIAL DEMANDED
RONALD C. KEATING, JOHN T.                      :
SAHLBERG, and MELANIE STEINER,                  :
                                                :
            Defendants.                         :
--------------------------------------------------------  :
```

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against US Ecology, Inc. ("US Ecology or the

"Company") and the members US Ecology's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of US Ecology by affiliates of Republic Services, Inc. ("Republic Services")

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 11, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Bronco Acquisition Corp. ("Merger Sub"), a wholly-owned subsidiary of Republic Services, will merge with and into US Ecology with US Ecology surviving as a wholly-owned subsidiary of Republic Services (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 8, 2022 (the "Merger Agreement"), each US Ecology stockholder will receive $48.00 in cash (the "Merger Consideration") for each US Ecology share owned.

1.       As discussed below, Defendants have asked US Ecology's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Barclays Capital, Inc. ("Barclays") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey" and along with Barclays, the "Financial Advisors") in support of their fairness opinions.

2.       It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.       For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to US Ecology's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because US Ecology is traded on the NASDAQ Global Select Market, which is headquartered in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of US Ecology stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant Richard Burke has served as a member of the Board since 2020.

9.      Individual Defendant E. Renae Conley has served as a member of the Board since 2020.

10.     Individual Defendant Katina Dorton has served as a member of the Board since 2014.

11.     Individual Defendant Glenn A. Eisenberg has served as a member of the Board since 2018.

12.     Individual Defendant Jeffrey R. Feeler has served as a member of the Board since 2013 and as Chairman of the Board since 2015, and is the Company's President and Chief Executive Officer.

13.     Individual Defendant Daniel Fox has served as a member of the Board since 2010.

14.     Individual Defendant Mack L. Hogans has served as a member of the Board since 2021.

15.     Individual Defendant Ronald C. Keating has served as a member of the Board since 2017.

16.     Individual Defendant John T. Sahlberg has served as a member of the Board since 2015.

17.     Individual Defendant Melanie Steiner has served as a member of the Board since 2019.

18.     Defendant US Ecology a Delaware corporation and maintains its principal offices at 101 S. Capitol Blvd., Suite 1000, Boise, Idaho 83702.  The Company's stock trades on the NASDAQ Global Select under the symbol "ECOL."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

21.     US Ecology, through its subsidiaries, provides environmental services to commercial and government entities in the United States, Canada, Europe, the Middle East, Africa, Mexico, and internationally. It operates through three segments: Waste Solutions, Field Services,

and Energy Waste. The Waste Solutions segment offers specialty waste management services, including treatment, disposal, beneficial re-use, and recycling of hazardous, non-hazardous, and other specialty waste at company-owned treatment, storage, and disposal facilities, as well as wastewater treatment services. The Field Services segment provides logistics, and response solutions, which includes specialty waste packaging, collection, transportation, and total waste management; and land and marine based emergency response, oil spill removal organization standby compliance, remediation, and industrial services. The Energy Waste segment offers energy waste management and critical support services to up-stream oil and gas customers. Its services include spill containment and site remediation; equipment cleaning and maintenance; specialty equipment rental, including tanks, pumps, and containment; safety monitoring and management; and transportation and disposal. US Ecology, Inc. serves oil refineries, chemical production plants, steel mills, and waste brokers/aggregators serving small manufacturers and other industrial customers. The Company was formerly known as American Ecology Corporation and changed its name to US Ecology, Inc. in February 2010. US Ecology was founded in 1952 and is headquartered in Boise, Idaho.

22.     On February 9, 2022, the Company announced the Proposed Transaction:

> PHOENIX and BOISE, Idaho, Feb. 9, 2022 /PRNewswire/ -- Republic Services, Inc. (NYSE: RSG) and US Ecology, Inc. (NASDAQ-GS: ECOL) have entered into a definitive agreement under which Republic Services will acquire all outstanding shares of US Ecology for $48 per share in cash, representing a total value of approximately $2.2 billion including net debt of approximately $0.7 billion.
>
> US Ecology is a leading provider of environmental solutions offering treatment, recycling and disposal of hazardous, non-hazardous and specialty waste. US Ecology's trailing twelve-month revenue as of September 30, 2021, was $968 million and adjusted EBITDA was $156 million.[1]

"Today's announcement enables Republic Services to provide customers with one of the most complete set of product offerings across the environmental services space and creates significant value for our stakeholders," said Jon Vander Ark, president and chief executive officer at Republic Services. "This strategic acquisition expands our geographic footprint across the U.S. and Canada and provides vertical integration capabilities for our environmental solutions business."

"We are pleased to have reached this agreement with Republic Services, an established leader in the industry, recognized for its commitment to safety, sustainability and superior customer service," said Jeff Feeler, chairman, chief executive officer and president at US Ecology. "2022 marks US Ecology's 70th year of operations, built around providing environmental solutions that protect human health and the environment. The combination of our companies provides a platform to accelerate our common strategy of providing a full complement of environmental solutions to better our world. In addition, this transaction showcases the value of US Ecology's business, providing our stockholders with attractive and certain value, and brings together a network of assets with extensive environmental solutions expertise to handle customers' most challenging and complex needs. I would like to thank US Ecology's employees for their hard work and dedication to this mission. We look forward to working with the Republic Services team to complete the transaction and deliver premium products and services."

**Strategic and Financial Benefits**

**Vertically integrates and expands Republic's environmental solutions footprint.** The acquisition of US Ecology will add a national platform of difficult-to-replicate assets and talent to enable Republic to provide customers environmental solutions from collection through disposal. This includes adding nine specialty waste landfills with five hazardous waste landfills, 16 RCRA permitted TSDFs, seven wastewater treatment facilities, and over 80 environmental services field locations including treatment and recycling centers.

**Positions Republic as a single-source partner for customers.** Customers with multiple recycling and waste service needs value the ability to consolidate services with a single partner who has a successful track record of safety, compliance, and environmental responsibility. The acquisition will allow Republic to provide customers a comprehensive set of environmental services

including recycling, solid waste, special waste, hazardous waste, container rental and field services.

**Expects meaningful synergy opportunities and to be financially accretive.** The acquisition will allow Republic to leverage its core capabilities, standardized operating model and investment in digital to enhance profitability across the new portfolio of assets. Republic expects the transaction to be immediately accretive to adjusted earnings and free cash flow. Republic anticipates approximately $40 million in cost synergies within three years following the acquisition, expected to result in double-digit returns. The combined company adjusted free cash flow conversion is expected to be at least 47 percent by 2024.

**Accelerates growth opportunities.** Expanding Republic's environmental solutions footprint and capabilities will create the opportunity for outsized revenue growth. The combined business is expected to drive cross-selling opportunities between existing customers of Republic and US Ecology. The acquisition of US Ecology will also provide Republic a platform to pursue additional tuck-in acquisitions in the highly fragmented environmental solutions business.

**Financing –** The transaction is not subject to a financing condition. Republic Services intends to finance the transaction using existing and new sources of debt.

Following completion of the transaction, Republic Services expects to maintain a strong balance sheet and solid investment-grade credit rating. The Company plans net debt-to-EBITDA, as defined in our credit agreement, to return back below 3x within 18 months of closing the transaction.

**Timing and Approvals –** The transaction was unanimously approved by the boards of directors of both companies and is expected to close by the end of the second quarter, subject to the satisfaction of customary closing conditions, including receipt of regulatory approvals and approval by holders of a majority of the outstanding shares of US Ecology's common stock.

**Advisors –** Moelis & Company LLC is serving as exclusive financial advisor to Republic Services and Davis Polk & Wardwell LLP is serving as Republic Services' legal counsel. Barclays PLC and Houlihan Lokey Capital, Inc. are serving as co-financial advisors to US Ecology. Dechert LLP is serving as US Ecology's legal counsel.

* * *

23.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that US Ecology's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

24.    On March 11, 2022, US Ecology filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.    The Proxy Statement fails to provide material information concerning financial projections by US Ecology management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors (and sometimes calculated by the Financial Advisors) with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide,

certain information in the projections that the Proxy provided. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.    For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted EBITDA (excluding SBC and ROI), Unlevered Cash Flows, Unlevered Free Cash Flows (Enterprise), and Unlevered Free Cash Flows (ROI), but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30.    With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual financial metrics and multiples for the companies observed by Barclays in the analysis.

31.    With respect to Barclays' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics and multiples for the transactions observed by Barclays in the analysis.

32.    With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of US Ecology; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2022 through 2026; (iii) the inputs and assumptions underlying the use of a range of perpetuity growth rates of 2.0% to 3.0%; (iv) the number of fully-diluted shares of US Ecology Common Stock; (v) the inputs and assumptions underlying the use of the range of discount rates of 8.5% to 9.5%; (vi) the estimated weighted

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

average cost of capital for the Company; and (vii) the estimated net debt of the Company as of December 31, 2021.

33.     With respect to Barclays' *Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of a range of EV to NTM Adjusted EBITDA multiples of 8.5x to 10.5x; (ii) the number of fully-diluted shares of US Ecology Common Stock; (iii) the inputs and assumptions underlying the use of the discount rate of 9.9%; (iv) the estimated weighted average cost of capital for the Company; and (v) the estimated net debt of the Company as of December 31, 2021.

34.     With respect to Barclays' *Analyst Price Targets Analysis*, the Proxy Statement fails to disclose the research analysts observed and their per share price targets as of February 4, 2022.

35.     With respect to Houlihan Lokey's *Discounted Cash Flow Analysis – Enterprise Basis*, the Proxy Statement fails to disclose: (i) the terminal value of US Ecology; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2022 through 2026; (iii) the inputs and assumptions underlying the use of a range of perpetuity growth rates of 2.5% to 3.0%; (iv) the number of fully-diluted shares of US Ecology Common Stock; (v) the inputs and assumptions underlying the use of the range of discount rates of 8.5% to 9.5%; (vi) the estimated weighted average cost of capital for the Company; and (vii) the estimated net debt of the Company as of December 31, 2021.

36.     With respect to Houlihan Lokey's *Discounted Cash Flow Analysis – ROI Initiatives Basis*, the Proxy Statement fails to disclose: (i) the terminal value of US Ecology; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2023 or 2024 through 2026; (iii) the inputs and assumptions underlying the use of a range of perpetuity growth rates of 2.5% to 3.0%; (iv) the number of fully-diluted shares of US Ecology Common Stock; (v)

the inputs and assumptions underlying the use of the range of discount rates of 11.0% to 12.0%; and (vi) the estimated weighted average cost of capital for the Company.

37.    With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for the companies selected by Houlihan Lokey in the analysis.

38.    With respect to Houlihan Lokey's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for the transactions selected by Houlihan Lokey in the analysis.

39.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of US Ecology within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of US Ecology, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of US Ecology, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of US Ecology, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 15, 2022                    **MELWANI & CHAN LLP**

                                                 By:  */s/ Gloria Kui Melwani*
                                                        Gloria Kui Melwani
                                                        1180 Avenue of the Americas, 8th Fl.
                                                        New York, NY 10036
                                                        Telephone: (212) 382-4620
                                                        Email: gloria@melwanichan.com

                                                        *Attorneys for Plaintiff*